FILED

**BUCKLEYSANDLER LLP**
RICHARD E. GOTTLIEB (State Bar No. 289370)
FREDRICK S. LEVIN (State Bar No. 187603)
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Phone: (310) 424-3984
Facsimile: (310) 424-3960
Rgottlieb@Buckleysandler.Com
Flevin@Buckleysandler.Com

2014 APR -2 AM 10:51
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

Attorneys for Plaintiff Desside Holdings Limited

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESSIDE HOLDINGS LIMITED,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MEGAWINE, INC., BORIS SHATS, and ARTEM ZASTOUPAILO,<br><br>　　　　Defendants. | Case No. CV14-2483 FMO RZx<br><br>**DECLARATION OF NATALIA POKAZANOVA IN SUPPORT OF APPLICATION FOR PREJUDGMENT ATTACHMENT** |

## Declaration of Natalia Pokazanova

I, Natalia Pokazanova, declare as follows:

1. I am an attorney (license number 606 issued by the Main Directorate of the Ministry of Justice of Russia for St. Petersburg and Leningrad region August 26, 2003, registration number 47/810 in the Leningrad Region register of attorneys at the law firm Cazu Belli (Russia, St. Petersburg, number 18 Mokhovaya Street, Room 17-N).

I am counsel of record and representative for Desside Holdings Limited ("Desside") in Case Numbers A56-48493/2013 and A56-48505/2013 (the "Russian Legal Proceedings"), filed in the Arbitration Court of St. Petersburg and the Leningrad Region (the "Russian Tribunal") in the Russian Federation.

2. I am an attorney admitted to practice law before courts established in accordance with the Constitution of the Russian Federation and the Federal Constitutional Law of December 31, 1996 number 1-FKZ 'On the judicial system of the Russian Federation' including the Constitutional Court of the Russian Federation, the Supreme Court of the Russian Federation, republic supreme courts, regional courts, courts of cities of federal significance, courts of autonomous regions and districts, district courts, military and specialized courts within the system of federal courts of general jurisdiction; the Supreme Arbitration Court of the Russian Federation, precinct federal arbitration courts of Subjects of the Russian Federation and specialized arbitration courts within the system of federal arbitration courts. Courts of the Subjects of the Russian Federation including the constitutional and statutory courts of the Subjects of the Russian Federation and magistrates being judges of general jurisdiction of Subjects of the Russian Federation. In my legal career of 26 years, I have practiced law in the courts of the Russian Federation for 20 years.

## Execution of the 2012 Loan Agreement

3. On or about November 12, 2012, Mr. Vadim Tomchin appeared in my offices in St. Petersburg, Russia. In my office, I verified the identity of Mr.Tomchin and received his acknowledgment of authority to enter into the following contract on behalf of CJSC Mozel: the Agreement Supplementary to Contract No.1-09-2006 of 01.09.2006 and Contract No. 1-07-2008 of 01.07.2008 concluded between the Creditor Desside Holdings Limited and the Borrower CJSC Mozel (the "2012 Loan Agreement").

4. In my office and in my presence, I then watched as Mr. Tomchin affixed his signature to the 2012 Loan Agreement. I also watched *[him]* initial each and every page of the 2012 Loan Agreement and each of each exhibit.

5. In accordance with Russian law, I then affixed to the 2012 Loan Agreement under my signature the following jurat:

> This Agreement is signed for the Borrower by Mr. V. Tomchin before solicitor Natalia Yevgeneva Pokazonova, registration number 47/810 in the register of lawyers of the Leningrad Region. The identity and authorization V. Tomchin have been verified.

6. As an attorney duly admitted to legal practice as stated above, I am authorized to act pursuant to the instructions of my client, including verifying the identity and authorization of signatories to instruments in the manner set forth above. In accordance with the above, the jurat affixed to the instrument constitutes *prima facie* evidence of the authenticity of Mr. Tomchin's signature and his authority to enter into the agreement on behalf of Mozel.

7. As noted above, I also watched as Mr. Tomchin affixed the corporate seal of Mozel to the instrument.

8. Under Russian law, affixation of a corporate seal to an instrument is an act of certification, since endorsement of an instrument with a seal establishes that it has been drafted in a specific organization, and the document is endorsed with a seal to certify authenticity of the official's signature. The presence of the

corporate seal is itself *prima facie* evidence that the instrument was duly and validly entered into on behalf of the corporation whose seal is affixed to this instrument.

9. A true and correct copy of the 2012 Loan Agreement between Desside Holdings Limited and Russian Joint Stock Company Mozel is attached as Exhibit A.

## Legal Proceedings In Russia

10. On or about January 24, 2013, Mr. Tomchin signed on behalf of Mozel an agreement entitled Agreement Supplementary to Agreement No.7-12-2010 of 07.12.2010, Agreement No. 12-02-2011 of 12.02.2011, and Agreement No. 14-02-2011 of 14.02.2011 concluded between the Creditor Desside Holdings Limited and the Borrower CJSC Mozel (the "2013 Loan Agreement").

11. Pursuant to the 2012 and 2013 Loan agreements, and in accordance with applicable law, solely for the reason of Mozel's insufficient performance of its obligations for interest payments and returning a part of the principal debt, Desside accelerated the maturity date, and, upon Mozel's failure to respond to a proper demand for payment, initiated legal proceedings against Mozel.

12. These proceedings were prosecuted in the Arbitration Court of St. Petersburg and the Leningrad Region (the "Russian Tribunal") in the Russian Federation under Case Numbers A56-48493/2013 and A56-48505/2013 (the "Russian Legal Proceedings").

13. On January 23, 2014, the Russian Tribunal, entered judgment in favor of Desside on its claims for breach of the 2012 and 2013 Loan Agreements. The Tribunal's judgment was prepared in full on 30 January 2014.

14. In reaching its decision, the Russian Court rejected Mozel's defenses including, specifically, its defense of "fundlessness." In this defense, Mozel denied

that it received any funds from Desside pursuant to the 2012 and 2013 Loan Agreements. The Russian court rejected this defense. The Court also rejected Mozel's argument that the 2012 and 2013 Loan Agreements, and equally Mozel's statements containing requests for the transfer of funds to suppliers' accounts, were not concluded and/or were forgeries.

15. Instead, the Russian court entered the following judgment:

- on the recovery from Mozel for the benefit of Desside of the sum of 31 342 624.75 US dollars and 200 000.00 Rubles (in relation to case A56-48505/2103);

- on the recovery from Mozel for the benefit of Desside of the sum of 17 846 917.81 Euros and 200 000.00 Rubles (in relation to case A56-48493/2013).

16. On March 3, 2014, Mozel appealed the Tribunal's judgment to the Thirteenth Commercial Court of Appeal, which has appellate jurisdiction over court judgments entered in the Russian Legal Proceedings.

17. In Russia, as in other Continental European countries, review in the appellate court is *de novo*, which means that new evidence may be offered at this stage of the proceedings.

18. Under Russian law, Mozel's appeal results in an automatic stay of any post-judgment efforts to execute upon the judgment. Therefore, Desside has been unable to collect on Mozel's debt due to Mozel's appeal in the Russian Legal Proceeding.

19. Desside's response to the appeal will be prepared after review of Mozel's petitions at the Thirteenth Court of Appeal. It should be noted that Mozel, in breach of procedural legislation of the RF, does not consider itself bound to disclose evidence promptly, including by sending copies of petitions and other procedural documents either to Desside or to the company's registered attorneys on

the territory of the RF. Such inequitable conduct on the part of Mozel would infer that the company is committing legal abuse.

20. On information and belief, Mozel has used the time the Russian Legal Proceeding has been pending to transfer and conceal assets, including the transfer of assets to Megawine, leaving Mozel undercapitalized.

## Breach of Contract under Russian Law

21. The elements for a cause of action for breach of contract under Russian law are: (1) valid formation of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.

22. Under Russian law, a loan agreement contract with an interest rate starting at 8% per year, rising to 16% if the debtor is late on payments, rising to 25% if the debtor is more than 7 days late on payments, and rising to 100% interest if debtor is 30 days later on payment is permissible.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on [19 March 2014].

*[signed]*
_____
Natalia Pokazanova

**BUCKLEYSANDLER LLP**
РИЧАРД Е. ГОТТЛИБ (RICHARD E. GOTTLIEB) (Зарегистрирован в
Коллегии адвокатов штата за номером 289370)
ФРЕДРИК С. ЛЕВИН (FREDRICK S. LEVIN) (Зарегистрирован в Коллегии
адвокатов штата за номером 187603)
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Телефон: (310) 424-3984
Факс: (310) 424-3960
Rgottlieb@Buckleysandler.Com
Flevin@Buckleysandler.Com

Адвокаты Истца - компании «Desside Holdings Limited»

## ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ АМЕРИКИ
## ЦЕНТРАЛЬНЫЙ ОКРУГ ШТАТА КАЛИФОРНИЯ

| | |
|---|---|
| DESSIDE HOLDINGS LIMITED,<br><br>               Истец,<br><br>против<br><br>MEGAWINE, INC., БОРИСА ШАЦА и АРТЕМА ЗАСТУПАЙЛО,<br><br>               Ответчики. | Дело No.<br><br>ЗАЯВЛЕНИЕ НАТАЛИИ ПОКАЗАНОВОЙ В ПОДДЕРЖКУ ХОДАТАЙСТВА О ДОСУДЕБНОМ АРЕСТЕ ИМУЩЕСТВА |

### Заявление Наталии Показановой

Я, Наталия Показанова, заявляю следующее:

1. Я являюсь адвокатом (удостоверение номер 606, выдано 26 августа 2003 г. Главным управлением Министерства юстиции России по Санкт-Петербургу и Ленинградской области, регистрационный номер 47/810 в реестре адвокатов Ленинградской области, Коллегия адвокатов «Казус Белли» (Россия, Санкт-Петербург, улица Моховая, номер 18, помещение 17-Н).

Я являюсь зарегистрированным адвокатом и представителем компании «Desside Holdings Limited» («Desside») по делам за номерами А56-48493/2013 и А56-48505/2013 («Судебные процессы в России»), рассматриваемым в арбитражном суде Санкт-Петербурга и Ленинградской области («Суд в России») в Российской Федерации.

2. Я являюсь адвокатом, должным образом допущенным к адвокатской практике в судах, учрежденных в соответствии с Конституцией Российской Федерации и Федеральным конституционным законом от 31 декабря 1996 г., номер 1-ФКЗ «О судебной системе Российской Федерации», включая Конституционный Суд Российской Федерации, Верховный Суд Российской Федерации, верховные суды республик, областные и краевые суды, суды городов федерального значения, суды автономных областей и округов, районные суды, военные и специализированные суды в рамках системы федеральных судов общей юрисдикции; Высший Арбитражный Суд Российской Федерации, федеральные арбитражные суды округов субъектов Российской Федерации и специализированные арбитражные суды в рамках системы федеральных арбитражных судов. Суды субъектов Российской Федерации, в том числе конституционные и уставные суды субъектов Российской Федерации и мировые судьи, являющиеся судьями общей юрисдикции субъектов Российской Федерации. Из 26 лет моей юридической

карьеры я 20 лет занимаюсь адвокатской практикой в судах Российской Федерации.

### Оформление Кредитного договора 2012 г.

3. 12 ноября 2012 г. или примерно в эту дату г-н Вадим Томчин лично явился в мой офис в г. Санкт-Петербурге, Россия. В моем кабинете я установила личность г-на Томчина и получила подтверждение его полномочий на заключение следующего договора от имени ЗАО «Мозель»: Соглашение к Договору № 1-09-2006 от 01.09.2006 и Договору № 1-07-2008 от 01.07.2008, заключенным между Кредитором, компанией «Desside Holdings Limited», и Заемщиком, ЗАО «Мозель» («Кредитный договор 2012 г.»).

4. В моем кабинете и в моем присутствии я затем наблюдала, как г-н Томчин поставил свою подпись под Кредитным договором 2012 г. Также я наблюдала за тем, как он парафировал абсолютно каждую страницу Кредитного договора 2012 г. и все до единой страницы каждого приложения.

5. В соответствии с российским законодательством я затем добавила к Кредитному договору 2012 г. под моей подписью следующее засвидетельствование:

> «Настоящее соглашение подписано от имени Заемщика г-ном В. Томчиным в присутствии адвоката Наталии Евгеньевны Показановой, регистрационный номер 47/810 в реестре адвокатов Ленинградской области. Личность и полномочия В. Томчина были проверены.»

6. Как адвокат, должным образом допущенный к юридической практике, как это указано выше, я уполномочена действовать в соответствии с указаниями своего клиента, в том числе проверять личность и полномочия сторон, подписавших документы в порядке, изложенном выше. С учетом изложенного, прикрепленное к документу свидетельствование, составляет

доказательственную презумпцию подлинности подписи г-на Томчина и его полномочий на заключение соглашения от имени компании «Мозель».

7. Как было отмечено выше, я также наблюдала за тем, как г-н Томчин скрепил документ корпоративной печатью компании «Мозель».

8. По российскому законодательству скрепление документа корпоративной печатью является удостоверительным действием, так как проставление печати на документе фиксирует, что он составлен в конкретной организации, печать на документе проставляется для заверения подлинности подписи должностного лица. Наличие корпоративной печати на документе само по себе также является доказательственной презумпцией того, что документ был заключен в надлежащем порядке и законным образом от имени компании, печатью которой скреплен этот документ.

9. Точная и верная копия экземпляра Кредитного договора 2012 г. между компанией «Desside Holdings Limited» и российским акционерным обществом «Мозель» приводится в Приложении А.

<u>Судебные процессы в России</u>

10. 24 января 2013 г. или примерно в эту дату г-н Томчин подписал от имени компании «Мозель» соглашение под названием «Соглашение к Договору № 7-12-2010 от 07.12.2010, Договору № 12-02-2011 от 12.02.2011 и Договору № 14-02-2011 от 14.02.2011», заключенным между Кредитором, компанией «Desside Holdings Limited», и Заемщиком, ЗАО «Мозель» («Кредитный договор 2013 г.»).

11. В соответствии с Кредитными договорами 2012 г. и 2013 г. и в соответствии с действующим законодательством, исключительно по причине ненадлежащего исполнения компанией «Мозель» принятых на себя

обязательств по уплате процентов и возврата части основного долга, компания «Desside» ускорила дату наступления срока погашения кредитов и, не получив никакого ответа компании «Мозель» на надлежащее требование платежа, возбудила судебное разбирательство против компании «Мозель».

12. Соответствующие процессы были начаты в Арбитражном суде Санкт-Петербурга и Ленинградской области («Суд в России») в Российской Федерации под номерами дел А56-48493/2013 и А56-48505/2013 («Судебные процессы в России»).

13. 23 января 2014 г. Суд в России принял решение в пользу компании «Desside» по ее иску в связи с нарушением условий Кредитных договоров 2012 г. и 2013 г. Решение Суда было изготовлено в полном объеме 30 января 2014 г.

14. При принятии решения российский суд признал несостоятельными возражения компании «Мозель», в том числе, в частности, ее возражение касательно «неполучения средств». Суть этого возражения сводится к тому, что компания «Мозель» отрицает, что она получила какие-либо средства от компании «Desside», в том числе в соответствии с Кредитными договорами 2012 г. и 2013 г. Российский суд отклонил это возражение. Суд также отклонил довод компании «Мозель» о том, что Кредитные договоры 2012 г. и 2013 г., а равно заявления компании «Мозель», содержащие просьбы о перечислении средств на счета поставщиков являются незаключенными и/или были сфальсифицированы.

15. Вместо этого, российский суд принял следующие решения:

- о взыскании с компании «Мозель» в пользу компании «Desside» суммы 31 342 624,75 долларов США и 200 000,00 рублей (по делу А56-48505/2013);

- о взыскании с компании «Мозель» в пользу компании «Desside» суммы 17 846 917,81 ЕВРО и 200 000,00 рублей (по делу А56-48493/2013).

16. 3 марта 2014 г. компания «Мозель» обжаловала Решение суда в Тринадцатый арбитражный апелляционный суд, который является апелляционной инстанцией по решениям судов, вынесенным в Судебных процессах в России.

17. В России, как и в других странах Континентальной Европы, рассмотрение в апелляционном суде осуществляется по принципу «*de novo*», а это значит, что на данном этапе судебного разбирательства могут быть предложены новые доказательства.

18. Согласно российскому законодательству апелляция компании «Мозель» приводит к автоматической приостановке любых усилий, направленных на исполнение решения суда после его вынесения. Таким образом, компания «Desside» не могла взыскать задолженность компании «Мозель» в связи с апелляцией компании «Мозель» в Судебных процессах в России.

19. Отзыв компании «Desside» на апелляционные жалобы будет подготовлен после ознакомления с жалобами компании «Мозель» в Тринадцатом апелляционном суде. Следует отметить, что компания «Мозель» в нарушение процессуального законодательства РФ, не считает своим долгом своевременно раскрывать доказательства, в том числе направлять копии жалоб и прочих процессуальных документов ни компании «Desside», ни зарегистрированным адвокатам компании на территории РФ. Данное недобросовестное поведение компании «Мозель» позволяет сделать вывод о том, что компания злоупотребляет правом.

20. На основании имеющейся информации существуют предположения, что компания «Мозель» использовала время рассмотрения

Судебных процессов в России для того, чтобы передать и скрыть активы, в том числе, передать активы компании «Megawine», в результате чего компания «Мозель» осталась с недостаточным оборотным капиталом.

### Нарушение договора по российскому законодательству

21. Элементами иска о нарушении договора по российскому законодательству являются: (1) действительное заключение договора, (2) исполнение обязательств истцом или оправдание неисполнения им своих обязательств, (3) нарушение договора ответчиком, (4) повлекшее причинение ущерба истцу.

22. Российское законодательство допускает заключение кредитных договоров с процентной ставкой от 8% в год, увеличивающуюся до 16%, если должник просрочиваете платежи, увеличивающуюся до 25%, если должник просрочивает платеж более чем на 7 дней, и, увеличивающуюся до 100% ставки, если должник просрочивает с оплатой на 30 дней.

Мне известно об ответственности за лжесвидетельство, предусмотренной законодательством Соединенных Штатов Америки, и я заявляю о том, что все вышеизложенное мною, является верным и правильным.

Подписано [19 марта 2014].

Наталия Показанова



RUSSIAN LINGUISTIC SERVICES

On **19th March 2014** this document was translated from Russian into English and I hereby testify that it is a true and faithful translation of the original.



**Katerina Burgess,** BA(Hons), MITI, IoL
Translation number: **O-01617**

New Lodge, Drift Road, Windsor, Berkshire SL4 4RR. United Kingdom
Telephone: +44 (0) 1344 894504   Facsimile: +44 (0) 1344 894501   Email: enquiries@russianlinguistics.com
www.russianlinguistics.com

Registered in England no. 3179791 - VAT Registered no. 641182167